### UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF OHIO
### WESTERN DIVISION AT TOLEDO

| | |
|---|---|
| **KAITLIN C. CARNAHAN**<br>14840 Township Road 215<br>Findlay, OH 45840<br><br>Plaintiff,<br><br>v.<br><br>**FIFTH THIRD BANK, N.A.**<br>℅ Timothy N. Spence, CEO<br>38 Fountain Square Plaza<br>Cincinnati, OH 45202<br><br>Defendant. | Case No.<br><br>Judge<br><br>**COMPLAINT FOR DAMAGES**<br><br>**JURY DEMAND ENDORSED HEREON** |

Plaintiff Kaitlin C. Carnahan, through counsel, for her Complaint for Damages against Defendant Fifth Third Bank, N.A., states as follows:

### PARTIES, JURISDICTION, AND VENUE

1. Plaintiff Kaitlin C. Carnahan ("Plaintiff" or "Carnahan") is the owner of residential real property, located at and commonly known as 14840 Township Road 215, Findlay, OH 45840 (the "Home").

2. Plaintiff currently maintains the Home as her primary, principal residence, and has so maintained the Home for all times relevant to the allegations of the Complaint.

3. Plaintiff was married to Russell Shawn Carnahan ("Shawn") at all times relevant to this matter until his death by suicide on or about December 21, 2020.

4. Defendant Fifth Third Bank, N.A. ("Defendant" or "Fifth Third") is a federally chartered bank with its headquarters and principal place of business located in Cincinnati, OH.

5. Fifth Third is the current servicer and owner of a note executed by Shawn (the "Note") and of a mortgage on the Home executed by Shawn and Plaintiff that secures the Note

(the "Mortgage") (collectively, the "Loan") and has serviced the Loan at all times relevant to the causes of action pleaded in this Complaint. *See*, a copy of the Loan documents, attached as **Exhibit 1**.

6.      Jurisdiction is conferred by 28 U.S.C. § 1331 as this action primarily arises under the Dodd-Frank Wall Street Reform and Consumer Protection Act (DFA), the Real Estate Settlement Procedures Act, 12 U.S.C. §§ 2601, *et seq*. (RESPA) and the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. §§ 1692k(d), *et seq.*

7.      This Court has supplemental jurisdiction to hear any state law statutory and common law claims pleaded, *infra*, or that otherwise may arise pursuant to 28 U.S.C. § 1367.

8.      Venue is appropriate within this District pursuant to 28 U.S.C. § 1391(b) as: (1) A substantial part of the events or omissions giving rise to the claims asserted herein occurred within this District; and, (2) the Home, the property that is the subject of the action, is located within this District.

## SUMMARY OF CLAIMS

9.      This action is filed to enforce statutory provisions of RESPA as well as regulations promulgated by the Consumer Financial Protection Bureau (CFPB) and that became effective on January 10, 2014, specifically, 12 C.F.R. § 1024.1, *et seq.* ("Regulation X").

10.     In January 2013, the CFPB issued a number of final rules concerning mortgage markets in the United States, pursuant to the DFA, Public Law No. 111-203, 124 Stat. 1376 (2010).

11.     Specifically, on January 17, 2013, the CFPB issued the Real Estate Settlement Procedures Act Mortgage Servicing Final Rules, 78 Fed. Reg. 10695 (Regulation X) (February 14, 2013), which became effective on January 10, 2014.

12.     Plaintiff asserts claims for relief against Fifth Third for violations of the specific

rules under RESPA and Regulation X, as set forth, *infra*.

13.     Fifth Third is a mortgage servicer as defined by RESPA and Regulation X. 12 U.S.C. § 2605(i)(2); 12 C.F.R. § 1024.2(b).

14.     The Loan is a "federally related mortgage loan" as defined by RESPA and Regulation X. 12 U.S.C. § 2602(1); 12 C.F.R. § 1024.2(b).

15.     The Loan is not a "reverse mortgage transaction" as defined by RESPA and Regulation X. 12 C.F.R. § 1024.31; *see* 12 C.F.R. § 1026.33(a) (Regulation Z).

16.     The Loan is secured by the Home which is Plaintiff's principal residence. 12 C.F.R. § 1024.30(c)(2).

17.     Fifth Third is subject to the requirements of RESPA and Regulation X, and does not qualify for the exception for "small servicers"—as defined by 12 C.F.R. § 1026.41(e)(4)—nor for the exemption for a "qualified lender"—as defined by 12 C.F.R. § 617.7000.

18.     Mortgage servicers are prohibited from failing "to take timely action to respond to a borrower's requests to correct errors relating to allocation of payments, final balances for purposes of paying off the loan, or avoiding foreclosure, or other standard servicer's duties." 12 U.S.C. § 2605(k)(1)(C).

19.     Mortgage servicers are prohibited from failing "to comply with any other obligation found by the [CFPB], by regulation, to be appropriate to carry out the consumer protection purposes of [RESPA]." 12 U.S.C. § 2605(k)(1)(E).

20.     Plaintiff has a private right action under RESPA and Regulation X pursuant to 12 U.S.C. § 2605(f) for the claimed violations and such action provides for remedies including actual damages, statutory damages, and attorneys' fees and costs.

## FACTUAL BACKGROUND

### *(The Foreclosure and Dual-Tracking)*

21.     Following Shawn's death, Plaintiff executed an surviving spouse affidavit evidencing her ownership interest in the Home and filed the same with the Recorder's Office for Hancock County, Ohio on or about January 21, 2021, Instrument No. 202100000773. See, a copy of such recorded instrument, attached as **Exhibit 2**.

22.     Fifth Third, represented by Clunk, Hoose Co., L.P.A. ("Clunk"), filed the complaint to initiate the Foreclosure on April 7, 2022.

23.     On or about July 25, 2022, Fifth Third, through Clunk, moved for summary judgment against Plaintiff in the Foreclosure.

24.     On or about September 23, 2022, Diane Bennett, a Loss Mitigation/Home Retention Department Coordinator with Clunk, emailed Plaintiff stating "[i]f you are wanting to keep the property or sell it, please reach out to [Fifth Third]... to complete the successor in interest process so you can move forward to be reviewed for a workout." *See*, a copy of an email thread between Plaintiff and Ms. Bennett, attached as **Exhibit 3**.

25.     On or about September 28, 2022, Plaintiff sent a loss mitigation application along with necessary materials to confirm Plaintiff as a successor in interest for the Loan (the "Application") to Fifth Third via email to SSIadmin@53.com and to Clunk via Ms. Bennett. *See*, Exhibit 3.

26.     Fifth Third acknowledged in its internal servicing notes that it received the Application on or before September 29, 2022. *See*, a copy of the pertinent servicing notes for the Loan, attached as **Exhibit 4**.

27.     Plaintiff, having not received any communications regarding the Application as of

October 7, 2022, emailed Ms. Bennett for a status update to which Ms. Bennett replied that Clunk was waiting on an update from Fifth Third. *See*, Exhibit 3.

28.     Plaintiff, having not received any communications regarding the Application as of October 11, 2022, emailed Ms. Bennett for a status update. *See*, a copy of an email thread between Plaintiff and representatives of Clunk, attached as **Exhibit 5**.

29.     On or about October 11, 2022, Ms. Bennett replied to Plaintiff's inquiry stating that Plaintiff had not yet been confirmed as a successor in interest and that there had been no further update as to the Application. *See*, Exhibit 5.

30.     On October 12, 2022, Attorney Ashley Mueller of Clunk emailed Plaintiff stating that Fifth Third required "a copy of [Plaintiff's] photo ID and a copy of [Plaintiff's] social security card in order to proceed with the successor in interest process". *See*, Exhibit 5.

31.     Plaintiff submitted the documentation to continue with the successor in interest process to Clunk and Fifth Third on October 13, 2022. *See*, Exhibit 5.

32.     Fifth Third confirmed Plaintiff as a successor in interest for the Loan on October 14, 2022.

33.     Neither Fifth Third nor Clunk issued any communications concerning the Application following Plaintiff's confirmation as successor in interest nor did either such party take any steps to avoid a ruling on the pending motion for summary judgment in the Foreclosure through November 8, 2022.

34.     On November 9, 2022, the Court issued a judgment entry and decree of foreclosure in the Foreclosure.

35.     Neither Fifth Third nor Clunk issued any communications concerning the Application following Plaintiff's confirmation as successor in interest through November 28,

2022.

36.     On or about November 28, 2022, Fifth Third, through Clunk, filed a *Praecipe for Order of Sale* in the Foreclosure and an Order of Sale was issued to the Sheriff of Hancock County to schedule a foreclosure sale of the Home.

37.     Distraught, Plaintiff called Fifth Third seeking an update as to the Application, which, per the internal servicing notes of Fifth Third, was deemed to be a new "verbal application" for loss mitigation. *See*, a copy of the pertinent servicing notes for the Loan, attached as **<u>Exhibit 6</u>**.

38.      On or about December 23, 2022, Fifth Third sent correspondence to the Borrower requesting a new loss mitigation application in its entirety, requesting, in part, multiple documents that Plaintiff had submitted numerous times to Fifth Third previously as part of other loss mitigation submissions and attempts to be confirmed as a successor in interest for the Loan, such as proof of Shawn's death. *See*, a copy of such correspondence attached as **<u>Exhibit 7</u>**.

39.     A foreclosure sale of the Home is currently scheduled for May 2, 2023 at 10:00 a.m.

### *(Plaintiff's Notice of Error)*

40.     On or about November 16, 2022, Plaintiff sent an "Error Resolution Notice under 12 C.F.R. §1024.35" (the "NOE") to Fifth Third at the address designated by Fifth Third for borrowers to submit notices of error pursuant to 12 C.F.R. §1024.35 (the "Designated Address"). *See*, a copy of the NOE, attached as **<u>Exhibit 8</u>**.

41.     Through the NOE, the Borrower alleged, *inter alia*, that Fifth Third dual-tracked the Loan by proceeding with obtaining summary judgment despite the submission of the Application. *See*, <u>Exhibit 8</u>.

42.    To date, the Borrower has not received, nor has Fifth Third sent, any written notice acknowledging receipt of the NOE or otherwise providing a substantive response to the same.

## IMPACT AND DAMAGES

43.    Had Fifth Third acted appropriately, Plaintiff would have had the opportunity to have the Application reviewed prior to foreclosure judgment being issued so as to have the opportunity to save her Home or otherwise best determine the most advantageous financial option available to her.

44.    Defendant's improper actions have further caused Carnahan to suffer from other damages including:

    a.  Loss of time and money for continued defense of the Foreclosure which would not have be reduced to judgment but for Defendant's actions in mishandling the loss mitigation processes concerning the Loan in violation of RESPA and Regulation X and mortgage servicing guidelines;

    b.  Loss of time and money for dealing with duplicative requests for loss mitigation documentation which would not have been necessary but for Defendant's wrongful conduct;

    c.  Lost time, costs, fees, and expenses to submit the the NOE to Fifth Third in a good faith attempt to have Fifth Third correct their erroneous conduct and to otherwise amicably resolve this matter to which Plaintiff did not receive a proper or adequate response; and,

    d.  Improper fees and charges imposed on the Loan due to judgment obtained and sales scheduled in violation of RESPA, Regulation X, and mortgage servicing guidelines, for which Plaintiff will likely become personally obligated should

she eventually obtain a loan modification or which otherwise may negatively impact any equity in the Home to which she is entitled; and,

e. Severe emotional distress driven by Defendant's actions and by the tangible fear that Defendant's refusal to properly handle the loss mitigation process related to the Loan will result in the imminent loss of her Home to foreclosure sale, which has resulted in frustration, loss of sleep, anxiety, depression, embarrassment, and other significant emotional distress above and beyond the emotional distress caused by the Foreclosure from which she was suffering prior to the conduct alleged in this complaint.

## PATTERN AND PRACTICE OF VIOLATIONS OF RESPA AND REGULATION X

45.     Fifth Third's actions are part of a pattern and practice of behavior in violation of Plaintiff's rights and in abdication and contravention of Fifth Third's obligations under the mortgage servicing regulations set forth in Regulation X of RESPA.

46.     As of the filing of this Complaint, consumers, nationwide, have lodged Four Hundred Eleven (411) consumer complaints lodged against Fifth Third, specifically concerning the issue identified on the CFPB's consumer complaint database as "loan modification, collection, foreclosure" related to mortgages. Each such complaint is filed and cataloged in the CFPB's publicly accessible online database which can be accessed at the following link: http://www.consumerfinance.gov/data-research/consumer-complaints/.

47.     Plaintiff has reviewed the CFPB's consumer complaint database and have identified narratives asserting that Fifth Third engaged in similar conduct against other borrowers. In particular, Plaintiff has reviewed the five (5) consumer complaints attached hereto and identified as **<u>Composite Exhibit 9</u>**. The date, details, and a narrative disclosed by the consumer is set forth

in each complaint. The complaints show conduct which demonstrates that Fifth Third has engaged

in a pattern or practice of violating RESPA with respect to other borrowers.

## COUNT ONE:

**VIOLATION OF RESPA, 12 C.F.R. § 1024.41(b)(2)(i) AND 12 U.S.C. § 2605(k)(1)(E)**

**(Failure to send written correspondence acknowledging the Application within five (5) days of confirming Plaintiff as a successor in interest)**

48.    Plaintiff restates and incorporates all of the allegations contained in paragraphs 1

through 47 in their entirety, as if fully rewritten herein.

49.    12 C.F.R. § 1024.41(a) explicitly provides that "[a] borrower may enforce the

provisions of this section pursuant to section 6(f) of RESPA (12 U.S.C. 2605(f))."

50.    12 C.F.R. § 1024.41(b) (1) provides that a servicer shall exercise reasonable

diligence in obtaining documents and information to complete a loss mitigation application.

51.    12 C.F.R. §1024.41(b)(2) provides that if a servicer receives a loss mitigation

application forty-five (45) days or more before a foreclosure sale that the servicer must promptly

review the application to determine whether the application is complete and notify the borrower

in writing within five (5) days, excluding public holidays, Saturdays, and Sundays, whether the

application is complete.

52.    12 C.F.R. §1024.41(c)(2)(iv) provides that "[i]f a borrower submits all the missing

documents and information as stated in the notice required pursuant to §102[4].41(b)(2)(i)(B), or

no additional information is requested in such notice, the application shall be considered facially

complete".

53.    Comment 1 of the Official CFPB Interpretations to 12 C.F.R. § 1024.41(c)(2)(iv)

provides that 12 C.F.R. §1024.41(c)(2)(iv) "requires a servicer to treat a facially complete

application as complete for the purposes of paragraphs (f)(2) and (g) until the borrower has been given a reasonable opportunity to complete the application."

54.   Comment 1.ii. of the Official Interpretations of the CFPB to 12 C.F.R. § 1024.41(b) provides, in relation to loss mitigation applications submitted by successors in interest states:

> If a servicer receives a loss mitigation application from a potential successor in interest and elects not to review and evaluate the loss mitigation application before confirming that person's identity and ownership interest in the property, the servicer must preserve the loss mitigation application and all documents submitted in connection with the application, and, **upon such confirmation, the servicer must review and evaluate the loss mitigation application in accordance with the procedures set forth in § 1024.41 if the property is the confirmed successor in interest's principal residence and the procedures set forth in § 1024.41 are otherwise applicable.** For purposes of § 1024.41, **the servicer must treat the loss mitigation application as if it had been received on the date that the servicer confirmed the successor in interest's status.** If the loss mitigation application is incomplete at the time of confirmation because documents submitted by the successor in interest became stale or invalid after they were submitted and confirmation is 45 days or more before a foreclosure sale, the servicer must identify the stale or invalid documents that need to be updated in a notice pursuant to § 1024.41(b)(2).

Supplement I to Part 1024 (emphasis added).

55.   Plaintiff submitted the Application on September 28, 2022 and Fifth Third acknowledged it was received as of September 29, 2022. *See*, Exhibits 3 and 4.

56.   No foreclosure sale of the Home was scheduled at the time Plaintiff submitted the Application.

57.   As Fifth Third elected not to review the Application upon receipt as Plaintiff had not been confirmed as a successor in interest, Fifth Third was required to preserve the Application and evaluate the Application in accordance with the procedures set forth in 12 C.F.R. § 1024.41 upon confirming Plaintiff as a successor in interest.

58.   Fifth Third confirmed Plaintiff as a successor in interest on October 14, 2022.

59.     On or about October 14, 2022, Fifth Third should have reviewed the Application and notified Plaintiff within five (5) business days as to whether the Application was complete and advised of any additional documentation needed to complete the Application in accordance with 12 C.F.R. § 1024.41(b)(2)(i)(B).

60.     Fifth Third's failure to acknowledge the Application within five (5) business days of confirming Plaintiff as a successor in interest and provide the requisite notice thereafter constitutes a violation of 12 C.F.R. § 1024.41(b)(2)(i) and 12 U.S.C. § 2605(k)(1)(E), and, as a result, Plaintiff has suffered actual damages as detailed, *supra*,.

61.     Fifth Third's actions are part of a pattern and practice of behavior in conscious disregard for Plaintiff's rights.

62.     Fifth Third's conduct as pled, *supra*, shows a conscious disregard for Plaintiff's rights.

63.     As a result of Fifth Third's actions, Fifth Third is liable to Plaintiff for statutory damages and actual damages as further described, *supra*. 12 U.S.C. § 2605(f)(1).

64.     Additionally, Plaintiff requests reasonable attorneys' fees and costs incurred in connection with this action. 12 U.S.C. § 2605(f)(3).

## <u>COUNT TWO:</u>

**TWO VIOLATIONS OF RESPA, 12 C.F.R. § 1024.41(g)(1) AND 12 U.S.C. § 2605(k)(1)(E)**

**(Dual-Tracking Plaintiff's Loan by failing to take steps to avoid a ruling on a motion for summary judgment in the Foreclosure and by moving for order of sale)**

65.     Plaintiff restates and incorporates all of the allegations contained in paragraphs 1 through 47 in their entirety, as if fully rewritten herein.

66.     12 C.F.R. § 1024.41(a) explicitly provides that "[a] borrower may enforce the provisions of this section pursuant to section 6(f) of RESPA (12 U.S.C. 2605(f))."

67.     12 C.F.R. § 1024.41(b) (1) provides that a servicer shall exercise reasonable diligence in obtaining documents and information to complete a loss mitigation application.

68.     12 C.F.R. §1024.41(b)(2) provides that if a servicer receives a loss mitigation application forty-five (45) days or more before a foreclosure sale that the servicer must promptly review the application to determine whether the application is complete and notify the borrower in writing within five (5) days, excluding public holidays, Saturdays, and Sundays, whether the application is complete.

69.     12 C.F.R. §1024.41(c)(2)(iv) provides that "[i]f a borrower submits all the missing documents and information as stated in the notice required pursuant to §102[4].41(b)(2)(i)(B), or no additional information is requested in such notice, the application shall be considered facially complete".

70.     Comment 1 of the Official CFPB Interpretations to 12 C.F.R. § 1024.41(c)(2)(iv) provides that 12 C.F.R. §1024.41(c)(2)(iv) "requires a servicer to treat a facially complete application as complete for the purposes of paragraphs (f)(2) and (g) until the borrower has been given a reasonable opportunity to complete the application."

71.     Comment 1.ii. of the Official Interpretations of the CFPB to 12 C.F.R. § 1024.41(b) provides, in relation to loss mitigation applications submitted by successors in interest states:

> If a servicer receives a loss mitigation application from a potential successor in interest and elects not to review and evaluate the loss mitigation application before confirming that person's identity and ownership interest in the property, the servicer must preserve the loss mitigation application and all documents submitted in connection with the application, and, ***upon such confirmation, the servicer must review and evaluate the loss mitigation application in accordance with the procedures set forth in § 1024.41 if the property is the confirmed successor in interest's principal residence and the procedures set forth in § 1024.41 are otherwise applicable.*** For purposes of § 1024.41, ***the servicer must treat the loss mitigation application as if it had been received on the date that the servicer confirmed the successor in interest's status.*** If the loss mitigation application is

incomplete at the time of confirmation because documents submitted by the successor in interest became stale or invalid after they were submitted and confirmation is 45 days or more before a foreclosure sale, the servicer must identify the stale or invalid documents that need to be updated in a notice pursuant to § 1024.41(b)(2).

Supplement I to Part 1024 (emphasis added).

72.     If a borrower submits a complete loss mitigation application more than thirty-seven (37) days prior to a foreclosure sale, then a servicer is prohibited from moving for judgment or from scheduling or conducting a foreclosure sale unless:

(1) The servicer has sent written notice pursuant to paragraph (c)(1)(ii), stating that the borrower is not eligible for any loss mitigation options and the borrower has not requested an appeal, or the borrower's appeal has been denied;

(2) The borrower rejects all loss mitigation options offered by the servicer; or,

(3) The borrower fails to perform under an agreement on a loss mitigation option.

12 C.F.R. § 1024.41(g).

73.     Comment 1 of the Official CFPB Interpretations to 12 C.F.R. § 1024.41(g) provides:

The prohibition on a servicer moving for judgment or order of sale includes making a dispositive motion for foreclosure judgment, such as a motion for default judgment, judgment on the pleadings, or summary judgment, which may directly result in a judgment of foreclosure or order of sale. *A servicer that has made any such motion before receiving a complete loss mitigation application has not moved for a foreclosure judgment or order of sale if the servicer takes reasonable steps to avoid a ruling on such motion or issuance of such order prior to completing the procedures required by § 1024.41*, notwithstanding whether any such action successfully avoids a ruling on a dispositive motion or issuance of an order of sale.

Supplement I to Part 1024 (emphasis added).

74.     Plaintiff submitted the Application on September 28, 2022 and Fifth Third acknowledged it was received as of September 29, 2022. *See*, Exhibits 3 and 4.

75.     No foreclosure sale of the Home was scheduled at the time Plaintiff submitted the Application.

76.     As Fifth Third elected not to review the Application upon receipt as Plaintiff had not been confirmed as a successor in interest, Fifth Third was required to preserve the Application and evaluate the Application in accordance with the procedures set forth in 12 C.F.R. § 1024.41 upon confirming Plaintiff as a successor in interest.

77.     Fifth Third confirmed Plaintiff as a successor in interest on October 14, 2022.

78.     On or about October 14, 2022, Fifth Third should have reviewed the Application and notified Plaintiff within five (5) business days as to whether the Application was complete and advised of any additional documentation needed to complete the Application in accordance with 12 C.F.R. § 1024.41(b)(2)(i)(B).

79.     Fifth Third failed to send the notice required by 12 C.F.R. § 1024.41(b)(2)(i)(B) and, as no documentation or information was requested through such notice, the Application was facially complete as of such failure, at the latest.

80.     Despite the pending motion for summary judgment and the Application being facially complete, Fifth Third, through Clunk, failed to take any steps to prevent a ruling on the motion for summary judgment from October 14, 2022 through November 9, 2022, and in violation of 12 C.F.R. § 1024.41(g).

81.     Fifth Third's actions, in failing to take steps to avoid a ruling on the motion for summary judgment in the Foreclosure after confirming Plaintiff as a successor in interest and while the Application was facially complete constitute a violation of 12 C.F.R. § 1024.41(g).

82.     On November 28, 2022, having still not taken any further action in relation that Application and with the Application remaining facially complete, Fifth Third, through Clunk,

filed a *Praecipe for Order of Sale* in the Foreclosure and an Order of Sale was issued to the Sheriff of Hancock County to schedule a foreclosure sale of the Home in another, separate violation of 12 C.F.R. § 1024.41(g).

83.     Fifth Third actions in failing to take steps to avoid a ruling on the motion for summary judgment in the Foreclosure and thereafter scheduling a sale of the Home in the Foreclosure after obtaining judgment, both with a facially complete loss mitigation application pending, constitute two (2) separate violations of 12 C.F.R. § 1024.41(g) and 12 U.S.C. § 2605(k)(1)(E) and, as a result, Plaintiff has suffered actual damages as detailed, *supra,*.

84.     Fifth Third's actions are part of a pattern and practice of behavior in conscious disregard for Plaintiff's rights.

85.     Fifth Third's conduct as pled, *supra*, shows a conscious disregard for Plaintiff's rights.

86.     As a result of Fifth Third's actions, Fifth Third is liable to Plaintiff for statutory damages and actual damages as further described, *supra*. 12 U.S.C. § 2605(f)(1).

87.     Additionally, Plaintiff requests reasonable attorneys' fees and costs incurred in connection with this action. 12 U.S.C. § 2605(f)(3).

## COUNT THREE:
## VIOLATION OF 12 C.F.R. §§ 1024.41(b)(1) or (c) AND 12 U.S.C. § 2605(k)(1)(E)

### (Failure to exercise reasonable diligence in obtaining documents and information to complete the Application)

88.     Plaintiff restates and incorporates all of the allegations contained in paragraphs 1 through 47 in their entirety, as if fully rewritten herein.

89.     12 C.F.R. § 1024.41(a) explicitly provides that "[a] borrower may enforce the provisions of this section pursuant to section 6(f) of RESPA (12 U.S.C. 2605(f))."

90.     12 C.F.R. § 1024.41(b)(1) provides that a servicer shall exercise reasonable diligence in obtaining documents and information to complete a loss mitigation application.

91.     12 C.F.R. §1024.41(b)(2) provides that if a servicer receives a loss mitigation application forty-five (45) days or more before a foreclosure sale that the servicer must promptly review the application to determine whether the application is complete and notify the borrower in writing within five (5) days, excluding public holidays, Saturdays, and Sundays, whether the application is complete.

92.     Comment 1.ii. of the Official Interpretations of the CFPB to 12 C.F.R. § 1024.41(b) provides, in relation to loss mitigation applications submitted by successors in interest states:

> If a servicer receives a loss mitigation application from a potential successor in interest and elects not to review and evaluate the loss mitigation application before confirming that person's identity and ownership interest in the property, the servicer must preserve the loss mitigation application and all documents submitted in connection with the application, and, ***upon such confirmation, the servicer must review and evaluate the loss mitigation application in accordance with the procedures set forth in § 1024.41 if the property is the confirmed successor in interest's principal residence and the procedures set forth in § 1024.41 are otherwise applicable.*** For purposes of § 1024.41, ***the servicer must treat the loss mitigation application as if it had been received on the date that the servicer confirmed the successor in interest's status.*** If the loss mitigation application is incomplete at the time of confirmation because documents submitted by the successor in interest became stale or invalid after they were submitted and confirmation is 45 days or more before a foreclosure sale, the servicer must identify the stale or invalid documents that need to be updated in a notice pursuant to § 1024.41(b)(2).

Supplement I to Part 1024 (emphasis added).

93.     Plaintiff submitted the Application on September 28, 2022 and Fifth Third acknowledged it was received as of September 29, 2022. *See*, Exhibits 3 and 4.

94.     No foreclosure sale of the Home was scheduled at the time Plaintiff submitted the Application.

95.     As Fifth Third elected not to review the Application upon receipt as Plaintiff had not been confirmed as a successor in interest, Fifth Third was required to preserve the Application and evaluate the Application in accordance with the procedures set forth in 12 C.F.R. § 1024.41 upon confirming Plaintiff as a successor in interest.

96.     Fifth Third confirmed Plaintiff as a successor in interest on October 14, 2022.

97.     Fifth Third took *no action* in relation to ensuring that the Application was complete or in otherwise obtaining a complete loss mitigation application upon confirming Plaintiff as a successor in interest until the Borrower again verbally reached out to Fifth Third more than two (2) months later seeking a status update.

98.     Moreover, and in further evidence of Fifth Third's lack of diligence in relation to the Application, upon finally taking action to have Plaintiff complete the Application, Fifth Third sent correspondence to the Borrower requesting a new loss mitigation application in its entirety, requesting, in part, multiple documents that Plaintiff had submitted numerous times to Fifth Third previously as part of other loss mitigation submissions and attempts to be confirmed as a successor in interest for the Loan, such as proof of Shawn's death. *See*, **Exhibit 7**.

99.     Fifth Third's actions in failing to exercise reasonable diligence in obtaining missing or incomplete information and documentation to complete the Application as expressly required by 12 C.F.R. § 1024.41(c)(2)(iv) and 12 C.F.R. § 1024.41(b)(2)(i)(B), constitute a violation of 12 C.F.R. § 1024.41(b)(1) and 12 U.S.C. § 2605(k)(1)(E), and, as a result, Plaintiff has suffered actual damages as detailed, *supra*,.

100.    Fifth Third's actions are part of a pattern and practice of behavior in conscious disregard for Plaintiff's rights.

101.     Fifth Third's conduct as pled, *supra*, shows a conscious disregard for Plaintiff's rights.

102.     As a result of Fifth Third's actions, Fifth Third is liable to Plaintiff for statutory damages and actual damages as further described, *supra*. 12 U.S.C. § 2605(f)(1).

103.     Additionally, Plaintiff requests reasonable attorneys' fees and costs incurred in connection with this action. 12 U.S.C. § 2605(f)(3).

## COUNT FOUR:
## TWO VIOLATIONS OF RESPA, 12 C.F.R. § 1024.35 AND 12 U.S.C. § 2605(k)

### (Failure to acknowledge receipt of and provide a substantive response to the NOE)

104.     Plaintiff restates and incorporates all of the allegations contained in paragraphs 1 through 52 in their entirety, as if fully rewritten herein.

105.     "A servicer shall comply with the requirements of this section for any written notice from the borrower that asserts an error and that includes the name of the borrower, information that enables the servicer to identify the borrower's mortgage loan account, and the error the borrower believes has occurred." 12 C.F.R. § 1024.35(a).

106.     "Within five days (excluding legal public holidays, Saturdays, and Sundays) of a servicer receiving a notice of error from a borrower, the servicer shall provide to the borrower a written response acknowledging receipt of the notice of error." 12 C.F.R. § 1024.35(d).

107.     A servicer must respond to a notice of error by either:

(A) Correcting the error or errors identified by the borrower and providing the borrower with a written notification of the correction, the effective date of the correction, and contact information, including a telephone number, for further assistance; or

(B) Conducting a reasonable investigation and providing the borrower with a written notification that includes a statement that the servicer has determined that no error occurred, a statement of the reason or reasons for this determination, a statement of the borrower's right to request documents relied

upon by the servicer in reaching its determination, information regarding how the borrower can request such documents, and contact information, including a telephone number, for further assistance.

12 C.F.R. § 1024.35(e)(1)(i).

108. A servicer must respond to a notice of error in compliance with 12 C.F.R. § 1024.35(e)(1):

(A) Not later than seven days (excluding legal public holidays, Saturdays, and Sundays) after the servicer receives the notice of error for errors asserted under paragraph (b)(6) of this section.

(B) Prior to the date of a foreclosure sale or within 30 days (excluding legal public holidays, Saturdays, and Sundays) after the servicer receives the notice of error, whichever is earlier, for errors asserted under paragraphs (b)(9) and (10) of this section.

(C) For all other asserted errors, not later than 30 days (excluding legal public holidays, Saturdays, and Sundays) after the servicer receives the applicable notice of error.

12 C.F.R. § 1024.35(e)(3)(i).

109. "A servicer of a federally related mortgage shall not...fail to take timely action to respond to a borrower's requests to correct errors relating to allocation of payments, final balances for purposes of paying off the loan, or avoiding foreclosure, or other standard servicer's duties." 12 U.S.C. § 2605(k)(1)(C).

110. A servicer of a federally related mortgage shall not "fail to comply with any other obligation found by the Bureau of Consumer Financial Protection, by regulation, to be appropriate to carry out the consumer protection purposes of this chapter." 12 U.S.C. § 2605(k)(1)(E).

111. On or about November 16, 2022, Plaintiff submitted the NOE to Fifth Third at the Designated Address. *See* Exhibit 8.

112. Through the NOE, the Borrower alleged, *inter alia*, that Fifth Third dual-tracked the Loan by proceeding with obtaining summary judgment despite the submission of the

Application. *See*, Exhibit 8.

113.    Fifth Third received the NOE at the Designated Address.

114.    Fifth Third failed to send any written notice acknowledging receipt of the NOE within five (5) business days of receipt of the same in violation of 12 C.F.R. § 1024.35(d).

115.    Fifth Third failed to send any substantive response to the NOE within thirty (30) business days of receipt of the same in violation of 12 C.F.R. § 1024.35(e).

116.    Fifth Third's actions in failing to acknowledge or respond to the NOE constitute violations of 12 C.F.R. §§ 1024.35(d) and (e) and 12 U.S.C. § 2605(k)(1)(E), and, as a result, Plaintiff has suffered actual damages as detailed, *supra*,.

117.    Further, Fifth Third's failure to comply with 12 C.F.R. §§ 1024.35(d) and (e) and 12 U.S.C. § 2605(k) caused Plaintiff's fees and costs associated with the delivery of the NOE to metamorphose into damages. *See Marais v. Chase Home Fin., LLC* (Marais II), 24 F. Supp. 3d 712, 726-728 (S.D. Ohio 2014); *see Marais v. Chase Home Fin. LLC* (Marais I), 736 F.3d 711, 721 (6th Cir. 2013); *Pope v. Carrington Mortg. Servs., LLC*, No. 1:18-CV-240, 2018 U.S. Dist. LEXIS 98413, at *11 (N.D. Ohio June 12, 2018) ("But other courts have held, and the Sixth Circuit has suggested, that a plaintiff can establish actual RESPA damages when the plaintiff incurred expenses submitting paperwork to a lender, but the lender 'ignored its statutory duties to adequately respond.'").

118.    Fifth Third's actions are part of a pattern and practice of behavior in conscious disregard for Plaintiff's rights and in abdication of Fifth Third's obligations under RESPA and Regulation X.

119.    As a result of Fifth Third's actions, Fifth Third is liable to Plaintiff for actual damages and statutory damages, as further described, *supra*. 12 U.S.C. § 2605(f)(1).

120.     Additionally, Plaintiff requests reasonable attorneys' fees and costs incurred in filing and maintaining this action. 12 U.S.C. § 2605(f)(3).

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Kaitlin C. Carnahan prays that this Court grant judgment against Defendant Fifth Third Bank, National Association, and award her the following:

A.     Actual damages from Defendant Fifth Third Bank, National Association in an amount to be determined at trial for the allegations contained in Counts One through Four.

B.     An award of statutory damages of Two Thousand Dollars ($2,000.00) from Defendant Fifth Third Bank, National Association for each violation of RESPA contained in Counts One through Four for a total of Twelve Thousand Dollars ($12,000.00);

C.     For attorney's fees and costs as to Counts One through Four;

D.     For such other relief which this Court may deem appropriate.

Respectfully submitted,

/s/ *Marc E. Dann*
Marc E. Dann (0039425)
Daniel M. Solar (0085632)
Michael A. Smith Jr. (0097147)
Jeffrey A. Crossman (0073461)
Dann Law
15000 Madison Ave.
Lakewood, OH 44107
Telephone: (216) 373-0539
Facsimile: (216) 373-0536
notices@dannlaw.com
*Counsel for Plaintiff Kaitlin C. Carnahan*

## **JURY DEMAND**

Plaintiff Kaitlin C. Carnahan hereby requests a trial by jury on all issues, with the

maximum number of jurors permitted by law.

/s/ *Marc E. Dann*
Marc E. Dann (0039425)
Daniel M. Solar (0085632)
Michael A. Smith, Jr. (0097147)
DannLaw
*Counsel for Plaintiff Kaitlin C. Carnahan*
